**Case Nos. 25-8061 and 25-8065**

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

PACIFICORP, a/k/a Rocky Mountain Power,
Plaintiff – Appellee,
v.
WYOMING INDUSTRIAL ENERGY CONSUMERS,
Intervenor Defendant – Appellant,
and
CHRISTOPHER BOSWELL, et al.,
Defendants.

---

PACIFICORP, a/k/a Rocky Mountain Power,
Plaintiff – Appellee,
v.
CHRISTOPHER BOSWELL, et al.,
Defendants – Appellants,
and
WYOMING INDUSTRIAL ENERGY CONSUMERS,
Intervenor Defendant.

---

*On Appeal from the United States District Court for the District of Wyoming*
*Hon. Kelly H. Rankin, U.S. District Court Judge*
*District Court Case No. 24-CV-101-KHR*

---

# APPELLANT AND INTERVENOR DEFENDANT'S JOINT REPLY BRIEF

---

James Peters
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
James.peters@wyo.gov
Phone: (307) 777-8662
*Attorney for Appellants Christopher Boswell, Christopher B. Petrie, and Michael M. Robinson, in their official capacities as Commissioners of the Public Service Commission of Wyoming*

Thorvald A. Nelson
Kristina (Tina) Van Bockern
Austin W. Jensen
Holland & Hart LLP
555 Seventeenth Street, Ste. 3200
Denver, CO 80202
Phone: (303) 295-8000
tnelson@hollandhart.com
trvanbockern@hollandhart.com
awjensen@hollandhart.com
*Attorneys for Appellant Wyoming Industrial Energy Consumers*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PacifiCorp's Preemption Claim Is Moot, and the Exception to the Mootness Doctrine Is Not Satisfied. ........ 2

A. PacifiCorp's Concessions on Appeal and Requested Relief in the District Court Demonstrate that Its Preemption Claim is Moot. ........ 3

1. PacifiCorp Concedes No Methodology Was Approved in the 2025 Order. ........ 3

2. PacifiCorp Requested Relief Only Regarding the 2024 Order, And It Concedes that the 2025 Order Superseded the 2024 Order. ........ 6

3. PacifiCorp Bypassed the Only Relief Available to It. ........ 9

B. The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply. ........ 10

1. ECAM Proceedings Do Not Implement the Challenged Methodology. ........ 11

2. The Parties Abandoned an Aurora-Based Methodology, and there Are Several Alternatives. ........ 12

II. The District Court and PacifiCorp Misapplied the Summary Judgment Standard ........ 14

A. Diverging Views of the Record Reveal Genuine Disputes of Material Fact. ........ 14

1. The District Court and PacifiCorp Relied on Limited Portions of the Record ........ 15

2. The Record Supports the Appellant's Wholistic Recitation of the Facts. .......... 17

B. PacifiCorp Obfuscated the Facts and Prompted the District Court to Adopt a Reductive View of the 2023 Rate Case Proceeding. .......... 20

1. The District Court Failed to View All the Evidence and Draw All Reasonable Inferences in the Light Most Favorable to the Non-Movants. .......... 20

2. PacifiCorp's Response Underscores Several Disputes of Material Fact Precluding Summary Judgment in its Favor. .......... 22

CONCLUSION .......... 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarillo v. R.R. Comm'n of Tex.*,
511 S.W.3d 787, 794–95 (Tx. Ct. App. 2016) .......... 8

*Chihuahuan Grasslands All. v. Kempthorne*,
545 F.3d 884, 893 (10th Cir. 2008) .......... 7

*Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*,
30 F.4th 1079, 1083–84 (11th Cir. 2022) .......... 6

*In re Dayton Power & Light Co.*,
113 N.E.3d 507 (Ohio 2018) .......... 8

*Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*,
633 F.3d 1297, 1308–09 (11th Cir. 2011) .......... 8

*State ex rel. City of Joplin v. PSC of Mo.*,
186 S.W.3d 290, 275 (Mo. Ct. App. 2005) .......... 8

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 15

*Supersede*, BLACK'S LAW DICTIONARY (12th ed. 2024) .......... 7

## INTRODUCTION

PacifiCorp's Response Brief tries to revive a moot case. The challenged 2024 Order was superseded, the allegedly "preempted" methodology was abandoned, and PacifiCorp stipulated to new rates that do not rely on Aurora or any purportedly unlawful adjustment. Yet PacifiCorp asks this Court to affirm a judgment that rests on a defunct order, an abandoned model, and a theory of federal preemption untethered to any operative Federal Energy Regulatory Commission ("FERC") mandate.

That effort fails because PacifiCorp sought prospective relief directed exclusively at the 2024 Order. When the Commission approved a settlement and entered the 2025 Order—setting new rates without using or endorsing any net-power-cost methodology—PacifiCorp's claimed ongoing violation of federal law terminated.

Even if the case were not moot, the district court's preemption ruling cannot stand. The filed-rate doctrine requires a threshold showing that a state commission disregarded a specific FERC-approved rate or mandate. PacifiCorp never identified one. Rather than identify a rate or mandate, the district court credited PacifiCorp's selective narrative,

failed to view the record as a whole, and drew inferences against the non-moving parties. In doing so, it overlooked critical, undisputed facts showing the Commission permitted full recovery of fixed reserve costs, allowed PacifiCorp to retain all FERC revenues, and approved additional proxy amounts for variable impacts—while merely disallowing exaggerated forecasted costs produced by PacifiCorp's—not FERC's—flawed model. At a minimum, genuine disputes of material fact precluded judgment as a matter of law.

Because PacifiCorp's claim is moot, the mootness exception does not apply, and the district court misapplied the summary judgment standard, the Court should reverse.

## ARGUMENT

### I. PacifiCorp's Preemption Claim Is Moot, and the Exception to the Mootness Doctrine Is Not Satisfied.

For PacifiCorp's claim—that the "federal defect with the 2024 Order" is the Commission's alleged use of "a completely different *methodology* to value [Third-Party Reserves] than FERC," Resp. Br. at 49—to withstand Appellants' mootness challenge, a preempted *methodology* would have had to survive beyond the challenged 2024 Order. But the record and PacifiCorp's own pleadings prove that the

dispute over the Commission's methodology—the Aurora adjustment—died when the 2025 Order became effective and cannot be revived.

### A. PacifiCorp's Concessions on Appeal and Requested Relief in the District Court Demonstrate that Its Preemption Claim is Moot.

PacifiCorp maintains that "[t]he 2025 Order did not moot the dispute," but rather "doubled down on the same legal error." *Id.* This is incorrect. As PacifiCorp concedes (1) the parties' settlement, approved by the 2025 Order, expressly disavowed reliance on *any* methodology, *id.* at 50, and (2) the 2025 Order superseded the 2024 Order, thereby annulling PacifiCorp's requested relief, *id.* at 24, 48–49, 53; Vol. 1, A-0042–43 ¶¶96, 97. It is *PacifiCorp* that "doubled down" by pursuing a futile attack on the defunct 2024 Order, rather than challenging the 2025 Order.

#### 1. PacifiCorp Concedes No Methodology Was Approved in the 2025 Order.

PacifiCorp asserts that "the Commission's methodology used in the 2024 Order" was "carried over in the 2025 Order" and remains "alive." Resp. at 49. But that is impossible. Even as it argues that the Commission "continued [to] use" a methodology that "interferes with FERC's exclusive jurisdiction," *id.*, PacifiCorp relies on record evidence

directly contradicting that contention. As PacifiCorp concedes, the 2025 Order approved a settlement agreement that explicitly declined to use or endorse *any* methodology, much less the Aurora adjustment now under appeal. The agreement stated: "[T]his Agreement will not be deemed to constitute an acknowledgment by any Party of the validity or invalidity of *any particular method, theory or principle of ratemaking or regulation*." Resp. at 50, 56; Vol. 10, A-1391 ¶14.

Therefore, while the settlement maintained the same dollar amount of Wyoming-allocated base NPC approved in the 2024 Order, the methodology adopted in that order—the only source of the alleged constitutional infirmity—was abandoned. *See* Vol. 10, A-1383–84. The record is unambiguous. *See* Op. Br. at 29 n.7. When asked at the public settlement hearing whether "the Parties agree on any specific methodology for determining base net power costs in future cases," PacifiCorp unequivocally answered "No." Vol. 10., A-1525. PacifiCorp further conceded that the "settlement and the base [NPC]" approved in the 2025 Order "do not rely on the Aurora model." *Id.* at A-1559.

The allegedly preempted methodology does not even appear in the record for the 2024 Rate Case. During those proceedings, WIEC asked

PacifiCorp to provide an NPC Report forecasting "NPC for calendar year 2025 using the forecasting methods the Commission approved in the [2024 Order]." Vol. 12, A-1964, 1981–82. But PacifiCorp "refused" and simply stated that "the Company's proposal holds base [NPC] flat in this general rate case ... proceeding as [a] proxy for ... NPC forecast." *Id.* PacifiCorp thus declined—even when invited—to provide an NPC calculation using the methodology it now alleges infected the 2025 Order.

Even though PacifiCorp's own case and the settlement did not rely on any methodology, PacifiCorp asserts that "the 2025 Order itself" "preserv[ed] PacifiCorp's rights to apply the District Court's decision to ongoing proceedings." Resp. Br. at 50. PacifiCorp cites to paragraph 65 of the 2025 Order. Vol. 11, A-1727. But paragraph 65 describes party *pre-settlement* positions—as opposed to Commission conclusions. The Commission's actual conclusions on the settlement read: "The Commission further acknowledges this provision of the Agreement lacks precedential value, does not constitute the Commission's or the Parties' acceptance of the Aurora power cost model, and nothing in the Agreement limits Parties' or the Commission's positions in the pending state and federal litigation regarding the 2023 GRC." *Id.* at A-1752–53. Contrary

to PacifiCorp's representation, the Commission preserved party positions, not PacifiCorp's newly-claimed "right."[1]

By PacifiCorp's own admission and design, the allegedly preempted methodology was not, and could not have been, carried over in the 2025 Order.

#### 2. PacifiCorp Requested Relief Only Regarding the 2024 Order, And It Concedes that the 2025 Order Superseded the 2024 Order.

In its complaint, PacifiCorp sought an injunction preventing the Commission from enforcing the 2024 Order and a declaration that the 2024 Order was preempted. Vol. 1, A-0039 ¶86 ("The Commissioners' infractions are *ongoing*," and "PacifiCorp seeks ... declaratory and injunctive relief." (emphasis added)); *id.* at A-0042–43 ¶¶96, 97 (because federal law "preempt[s] any state action modifying or overruling a filed rate, the [2024] Order ... is preempted," and PacifiCorp "will be

[1] PacifiCorp references its "right" to "propose adjustments to the 2025 Order[]" several times. Resp. Br. at 15–16, 50, 56–57. All citations are to PacifiCorp's *pre-settlement* testimony filed with its initial application. No such reservation is included in the subsequent settlement agreement. *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1083–84 (11th Cir. 2022) (scope of *res judicata* effect of court-approved settlement based on language of agreement, not pre-settlement pleadings).

irreparably harmed by the [2024] Order and the Commissioners' enforcement of the [2024] Order"). Accordingly, PacifiCorp's preemption claim was tethered to the 2024 Order—and expired with it. *See Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008) ("For the purpose of determining the issue of mootness, we will rely on the claims and requests for relief presented in the Complaint[.]").

Crucially, PacifiCorp repeatedly concedes that the 2025 Order superseded the 2024 Order. Resp. Br. at 24, 48–49, 53; *Supersede*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To annul, make void, or repeal by taking the place of."). Paired with PacifiCorp's concession that the 2025 Order relies on no methodology, the conclusion is inescapable: PacifiCorp's preemption claim is moot.

Accordingly, the district court's reliance on *Ex parte Young*, which applies only to actions seeking prospective relief against an ongoing violation of federal law, Op. Br. at 28, falls flat. *See* Vol. 12, A-2067 (district court determining PacifiCorp "continues to seek injunctive relief to force [the Commissioners] to refrain from adjusting their retail rates using allegedly preempted rationale in the *future*" (emphasis added)). PacifiCorp attested the settlement established no agreement "on any

specific methodology for determining base net power costs in *future* cases." Vol. 10, A-1525 (emphasis added). The alleged *ongoing* violation of federal law for which PacifiCorp sought *prospective* relief in its complaint disappeared with the superseded 2024 Order.[2]

In sum, the 2025 Order mooted the preemption claim at the heart of PacifiCorp's challenge to the 2024 Order. *See In re Dayton Power & Light Co.*, 113 N.E.3d 507 (Ohio 2018) (dismissing challenge to rate plan as moot because of commission approval of subsequent rate plan); *Amarillo v. R.R. Comm'n of Tex.*, 511 S.W.3d 787, 794–95 (Tx. Ct. App. 2016) (finding appeal of rate order moot because "a subsequent set of rates … effectively precludes any prospective relief"); *State ex rel. City of Joplin v. PSC of Mo.*, 186 S.W.3d 290, 275 (Mo. Ct. App. 2005) ("When tariffs are superseded by subsequent tariffs that are filed and approved, the superseded tariffs are generally considered moot and therefore not subject to consideration.") (internal quotations omitted).

[2] PacifiCorp's Response disaggregates mootness from *Ex Parte Young*. Resp. Br. Section II.A.–B. However, mootness—and specifically whether effective relief can be granted—must be evaluated within the confines of *Ex Parte Young*'s prospective relief requirements. *See Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d 1297, 1308–09 (11th Cir. 2011) (evaluating *Ex Parte Young*'s requirements within mootness analysis).

### 3. PacifiCorp Bypassed the Only Relief Available to It.

If, despite its concessions, PacifiCorp believed that the alleged constitutional defect in the now-voided 2024 Order also tainted the 2025 Order, its remedy was to challenge the 2025 Order directly—either by seeking leave to amend or by filing a new lawsuit. *See* Op. Br. at 32 n.9. PacifiCorp did neither. Instead, PacifiCorp chose to preserve its "just and reasonable" settlement consistent with its commitment to "support all elements of" the agreement, Vol. 10, A-1377, 1391, while pursuing relief directed at the superseded 2024 Order. That strategic choice does not preserve jurisdiction over a moot claim.

PacifiCorp's fabricated assertion that it "proposed setting its NPC at the same level approved in the 2024 Order" "to allow the federal court time to adjudicate the WIEC Adjustment methodology in the present lawsuit" stretches credulity, Resp. Br. at 15, and finds no support in the record. Op. Br. at 29 n.8.

Willingly avoiding a direct challenge to the 2025 Order does not save PacifiCorp's moot preemption claim regarding the 2024 Order.

## B. The Capable-of-Repetition-Yet-Evading-Review Exception Does Not Apply.

PacifiCorp argues that the exception to the mootness doctrine applies because the annual Energy Cost Adjustment Mechanism ("ECAM") proceedings "give[] the Commission the opportunity to employ its at-issue methodology to calculate NPC that improperly imputes revenue to PacifiCorp and traps its costs." Resp. Br. at 58. This contention fails because it misunderstands both (1) how the ECAM works, and (2) the nature of the challenged methodology.

PacifiCorp's argument rests on the false premise that this Court can somehow focus on the Commission's "preempted *methodology*" while ignoring the Aurora model. *Id.* at 54, 59. The issue, according to PacifiCorp, is the "Commission adopting the *WIEC Adjustment* that improperly imputed revenue." *Id.* at 54 (emphasis added). PacifiCorp would have this Court simply disregard *what* exactly WIEC adjusted. Make no mistake, the challenged methodology *is WIEC's adjustment to* the Aurora model. *See infra* at Section II.B.2. Aurora's centrality to this case informs why the mootness exception does not apply.

### 1. ECAM Proceedings Do Not Implement the Challenged Methodology.

The Commission adopted WIEC's adjustment to the Aurora model to set *base NPC* as part of Wyoming's retail rates. Vol. 1, A-0126 ¶203. Each year, the Wyoming-allocated share of PacifiCorp's actual NPC is compared to the base NPC, and 80% of the difference is recovered or returned through the ECAM. Vol. 7, A-1230 ¶¶51–52. Thus, in ECAM proceedings the Commission looks at PacifiCorp's actual costs and does not use the Aurora model or the challenged methodology. *Id.* at A-1229–30 ¶¶49–50.

PacifiCorp states that absent an injunction preventing the Commission from using the 2024 Order's allegedly preempted methodology, the Commission "will rely on an improper *[NPC] baseline* in annual ECAM proceedings." Resp. Br. at 59 (emphasis added). Similarly, the district court stated: "[I]t is quite clear from the parties' filings that the issue regarding trapped costs will continue to rear its head." Vol. 12, A-2068. The record refutes both.

During the 2024 Rate Case, PacifiCorp's Director of NPC stated that "all Aurora or NPC issues unrelated to customer rates in this [general rate case] … *do not impact this* [*rate case's*] *proposed NPC*

*baseline*." *Id.* at A-1958–59 (emphasis added). PacifiCorp further stated that "the output of any Aurora model *does not have any relevance on the base NPC* proposed in th[e] [general rate case] proceeding." *Id.* at A-1962 (emphasis added).

Accordingly, the 2025 Order established a new, stipulated-to baseline NPC amount that did not contain the alleged constitutional infirmity. Going forward, ECAM proceedings will compare actual NPC incurred for the prior year against the agreed-upon NPC baseline set by the 2025 Order. *See* Vol. 7, A-1229–30 ¶¶48–51; Vol. 9, A-1301, 1303. And because the challenged methodology—from which the alleged trapped costs were derived—was abandoned under the 2025 Order, it is irrelevant that ECAM "proceedings are only 'in effect for one year.'" Resp. Br. at 59.

### 2. The Parties Abandoned an Aurora-Based Methodology, and there Are Several Alternatives.

PacifiCorp further contends that it "will undoubtedly 'be subject to the same action again' absent relief" because "the Commission will rely on its unlawful methodology when calculating PacifiCorp's NPC." *Id.* at 53. This, too, fails.

For the same alleged trapped costs issue to arise in the future, PacifiCorp would have to present the same Aurora model and the Commission would have to deploy the same Aurora adjustment (the allegedly preempted methodology) adopted in the 2024 Order in future years. The parties' settlement demonstrates that that is not a foregone conclusion. The 2025 Order abandoned the methodology used in the prior rate case and expressly declined to adopt *any* methodology in its stead. *See* Vol. 10, A-1391 ¶14, A-1525. Moreover, PacifiCorp stated at the public settlement hearing that if other parties are not "comfortable with the Aurora model," it will "address a *different way of setting the forecasts* for base [NPC] in our next rate case." Vol. 10, A-1559 (emphasis added). There are many other methods fit for this purpose.

In the 2024 Rate Case, WIEC's expert discussed the shortcomings of the Aurora model and presented at least three "alternative methods that the Commission can use to evaluate whether the base NPC included in [PacifiCorp's] proposed rate increase is reasonable." Vol. 12, A-1988. In place of Aurora, WIEC's expert suggested: (1) "bringing back the GRID model" in use since 2008, *id.* at A-1993; Vol. 1, A-0098 ¶71; (2) a "simplistic method[]," such as "index[ing PacifiCorp's] NPC to market

prices by performing a linear regression between the two," Vol. 12, A-1993–94; and (3) a logarithmic approach, "evaluat[ing] the relationship between the change in market prices and the change in [dollar per Megawatt-hour] NPC," *id.* at A-1996–97.

Therefore, PacifiCorp did not carry its burden of showing that the capable of repetition, yet evading review exception to the mootness doctrine applies. It is not reasonable to assume that PacifiCorp will be subject to the same action again, and the district court erred by failing to dismiss its preemption claim as moot.

## II. The District Court and PacifiCorp Misapplied the Summary Judgment Standard.

PacifiCorp's merits defense fares no better. PacifiCorp continues to focus on a sliver of the factual record to support the faulty decision issued below. PacifiCorp, thus, fails to adequately refute that the district court—by conducting a superficial review of the 2024 Order and ignoring material portions of the record—ignored several disputes of fact and failed to draw reasonable inferences in favor of Appellants.

### A. Diverging Views of the Record Reveal Genuine Disputes of Material Fact.

The district court inappropriately granted summary judgment by failing to analyze *all* of the evidence. The parties' disparate views of the

record underscore the presence of yet unresolved factual disputes, which the district court was not at liberty to ignore. Fed. R. Civ. P. 56(a). Likewise, the district court's failure to view the record as a whole led it to inappropriately draw inferences against Appellants. *Cf. Obermeyer Hydro Accessories, Inc. v. CSI Calendaring, Inc.*, 852 F.3d 1008, 1014 (10th Cir. 2017) (courts "view the evidence" and "draw all reasonable inferences ... in the light most favorable to the nonmoving party").

### 1. The District Court and PacifiCorp Relied on Limited Portions of the Record.

The district court selected a small handful of facts to support its inferences against the nonmoving parties: In its final order, the district court suggested that this case had less to do with a dispute over the Aurora model and more to do with the Commission's "dissatisf[action] with the allocation of costs between in-state customers and other customers." Vol. 12, A-2070–71. Relying on select portions of expert testimony, the court improperly inferred that the Commission prevented PacifiCorp from recovering its costs associated with the FERC-mandated maintenance of third-party reserves because the district court thought the Commission believed it would be unreasonable and unfair for Wyoming customers to subsidize FERC-jurisdictional customers. *Id.*

While PacifiCorp also assumes the Commission's purported motive behind its adoption of the Aurora adjustment, Resp. Br. at 36, 40, 42, PacifiCorp primarily emphasizes a different set of facts: In its Response, PacifiCorp argues that its FERC-approved Open Access Transmission Tariff ("OATT") allocates costs for Third-Party Reserves and requires PacifiCorp to hold back a certain amount of generating capacity to satisfy the federally mandated Third-Party Reserve requirement. *Id.* at 34. PacifiCorp then contends that WIEC "disregard[ed]" PacifiCorp's OATT and generated NPC by toggling off the reserve requirement and removing third-party loads and resources completely from the Aurora model. *Id.* at 34–35. According to PacifiCorp, the Commission—based on WIEC's adjustment—set a retail rate based on PacifiCorp's fictional ability to produce and sell power into the regional energy market to offset NPC. *Id.* at 35. By PacifiCorp's telling, this methodology treats costs allocated under PacifiCorp's OATT as if FERC's requirements for holding and pricing reserves are not applicable, *id.* at 38–39, thereby imputing revenue and trapping $23.5 million on a Wyoming-allocated basis. *Id.* at 37–38.

As explained below, the district court's and PacifiCorp's narrow focus ignores critical material facts.

### 2. The Record Supports the Appellant's Wholistic Recitation of the Facts.

As WIEC and the Commission asserted before the district court and in their Opening Brief, at Section II.C., the following facts offer a comprehensive view of the 2023 Rate Case proceeding and demonstrate why summary judgment on preemption was inappropriate in PacifiCorp's favor:

**1.** FERC set PacifiCorp's Third-Party Reserve rates to collect the *fixed* capacity costs of the units most likely to provide that service to FERC-jurisdictional customers. Vol. 9, A-1246–47, 1258–59.

**2.** FERC did not set the *variable* (i.e., energy) cost impact of holding those reserves. *Id.* at A-1260–61; *see also* Vol. 7, A-1209–10 ¶10, 1224 ¶34, 1227 ¶41.

**3.** PacifiCorp filed the 2023 Rate Case and proposed to use the Aurora model to *forecast* base NPC for retail rates, including the modeled variable cost impact of holding

reserves for third-party customers. Vol. 7, A-1224–25 ¶35, 1207–08 ¶7; Vol. 1, A-0098 ¶71.

**4.** Aurora was not designed to simulate single-issue or single-utility closed system dispatch and was "not configured to evaluate [Third-Party Reserves]." Vol. 3, A-0833; Vol. 9, A-1269; Vol. 7, A-1207–08 ¶7.

**5.** PacifiCorp had to manipulate Aurora with significant workarounds, techniques, and out-of-model assumptions to get it to do what PacifiCorp wanted it to do. Vol. 7, A-1207–08 ¶7, 1225 ¶36; Vol. 9, A-1269.

**6.** Subsequently, WIEC's expert found that Aurora included irreconcilable errors, including an uncontested $74.1 million reserve modeling error. Vol. 7, A-1226 ¶40; Vol. 9, A-1272–73.

**7.** WIEC, therefore, proposed the following adjustments to the Aurora model:

**a.** Remove the MW that *PacifiCorp* forecasted for third-party loads and resources from the faulty modeling. Vol. 7, A-1226 ¶40.

**b.** Require Wyoming customers to pay 100% of all fixed generation costs, including those used for Third-Party Reserves. *Id.* at A-1227 ¶43.

**c.** Allow PacifiCorp to keep the $12.2 million in expected Third-Party Reserve revenue (from FERC OATT rates) that would otherwise be credited to Wyoming customers. *Id.*

**d.** Include [redacted] MW *more* capacity for reserves in Aurora than PacifiCorp itself argued was necessary at FERC (and FERC accepted) when setting rates for Third-Party Reserves. Vol. 8, A-1228 ¶45.

**8.** The Commission adopted WIEC's adjustment, specifying that "an adjustment is needed to revalue third-party reserves in NPC in the same manner that FERC values them." Vol. 1, A-0128 ¶215. The Commission reasoned that "this ensures Wyoming PSC-jurisdictional customers do not subsidize FERC-jurisdictional customers." *Id.*

As explained below, these facts, collectively, show why the district court erred in granting summary judgment on preemption in PacifiCorp's favor.

### B. PacifiCorp Obfuscated the Facts and Prompted the District Court to Adopt a Reductive View of the 2023 Rate Case Proceeding.

Direct comparisons of the facts mapped out above reveal a disregard for the factual record leading to manifest errors in the district court's summary judgment order. PacifiCorp obfuscated the evidence, and the district court ignored crucial facts.

#### 1. The District Court Failed to View All the Evidence and Draw All Reasonable Inferences in the Light Most Favorable to the Non-Movants.

The district court declined to grapple with most of the evidence and instead grounded its preemption finding almost exclusively on a single element of fact 8 in Appellants' list—the *perceived motivation* behind the Commission's adoption of WIEC's adjustment. Its ruling centers on the fallacy that the Commission (1) was "dissatisfied" with *FERC's* "allocation of costs between in-state customers and other customers" and, therefore, (2) rejected as "unfair" the costs associated with the federally required maintenance of third-party reserves. Vol. 12, A-2071; *see* Op. Br. at 58–59. According to the district court, all this was evident from

the "face of the Commission's Order"; so, it need not look any further. Vol. 12, A-2071.

If, however, the district court had drawn reasonable inferences in the Commission's favor (as it was required to do), it would have afforded greater weight to another statement on the face of the 2024 Order: "[A]n adjustment is needed to revalue third-party reserves in NPC *in the same manner that FERC values them*." Vol. 1, A-0128 ¶215 (emphasis added).[3] It is reasonable to infer from this, and the totality of the facts laid out in Appellants' list above, that the Commission sought to *honor* FERC mandates, but honoring FERC's approved OATT rates for Third-Party Reserves did not require the Commission to simply rubberstamp *PacifiCorp's* overinflated, Aurora-forecasted variable cost impacts to Wyoming customers of holding Third-Party Reserves. This inference enjoys considerable record support, as laid out below. As it is, though, the district court inverted the summary judgment mandate, discarding that key portion of WIEC's expert testimony in the following terms:

[3] PacifiCorp's Response chalks many of facts that belie its preemption analysis to "ad hoc litigation positions" because "[n]owhere does the 2024 Order claim that it adjusts the amount of reserves PacifiCorp needed to carry to comply with its FERC-approved tariff." Resp. Br. at 43. Just like the district court, PacifiCorp ignores this sentence in the 2024 Order.

"[Appellants] argue that their adjustment adheres more closely to FERC-approved costs than did [PacifiCorp's] estimate, but it is far from clear that this was the motivating factor behind the adjustment." Vol. 12, A-2071. Had the district court not sidestepped large portions of the record, the picture would have been clear.

### 2. PacifiCorp's Response Underscores Several Disputes of Material Fact Precluding Summary Judgment in its Favor.

The district court and PacifiCorp's preemption theories coalesce on the Commission's use of the word "subsid[y]," which arises from the motivation element of fact **8**. *See* Vol. 1, A-0128 ¶215; Vol. 12, A-2070 (district court referencing the Commission's alleged "finding that it was unfair for Wyoming retail customers to subsidize FERC-jurisdictional customers"); Resp. Br. at 36, 40, 42. PacifiCorp's preemption theory rests on its interpretation of only three facts in Appellants' list: **1** (FERC's Third-Party Reserve rates are set to collect PacifiCorp's fixed capacity costs); **7a** (WIEC's adjustment removed from the Aurora model the inflated MW value that *PacifiCorp* assumed for third-party loads and resources); and **8** (the Commission adopted WIEC's adjustment after crediting WIEC's expert testimony). The sum of these parts does not

amount to preemption. There are at least four factual disputes undermining the district court and PacifiCorp's interpretation of the subsidy discussion and precluding summary judgment in PacifiCorp's favor.

*First*, PacifiCorp argues that its OATT allocates *costs* for Third-Party Reserves and requires PacifiCorp to hold back generating *capacity* to satisfy the federally mandated Third-Party Reserve requirement. *Id.* at 34. There are several disputes at play, and the district court did not acknowledge, let alone resolve, any of them.

On capacity, PacifiCorp simply states that FERC requires PacifiCorp to hold reserves. *Id.* at 4 ("[FERC] requires PacifiCorp to hold back Third-Party Reserves"); 9 ("FERC requires PacifiCorp to file a tariff to maintain reserves for third-party users"); 11 ("PacifiCorp must hold back those reserves to maintain the grid's stability under its FERC tariff"); 17–18 ("PacifiCorp's Complaint explained that FERC requires PacifiCorp to maintain a portion of its power generation capacity in reserve"); 22 ("PacifiCorp's federal tariff requires it to hold generating capacity for Third-Party Reserves"); 24 ("The Commission's adopted methodology set a retail rate by disregarding the federal regulation that

requires PacifiCorp to maintain Third-Party Reserves"); 34 ("The federal tariff requires PacifiCorp to hold back generating capacity for the Third-Party Reserves to meet its federal requirements.... The Third-Party Reserves requirement prohibits PacifiCorp from selling that reserve energy"); 35 ("But this disregards the FERC tariff rate because PacifiCorp cannot sell that generating capacity to receive that revenue").

Crucially, PacifiCorp ignores *how much* capacity FERC requires PacifiCorp to hold; the answer is not favorable to its position. PacifiCorp's Third-Party Reserve rates were derived using a units-most-likely study that yielded 996.3 MW of *total* reserves capacity. Vol. 7, A-1202 ¶17. But PacifiCorp disregarded that FERC figure before the Wyoming Commission and instead included [redacted] MW of total reserves in its Aurora model. Vol. 8, A-1225 ¶37. True, WIEC's adjustment to the Aurora model reduced *PacifiCorp's* capacity estimate, but that does not present a preemption issue. Indeed, as fact **7.d** states, WIEC included [redacted] MW *more* capacity for reserves than PacifiCorp itself argued was necessary at FERC and FERC accepted. *Id.* at A-1228 ¶45; Op. Br. at 10, 54.

On cost, fact **1** states that PacifiCorp's Third-Party Reserve rates recover only the *fixed* capacity costs of the units most likely to provide reserve service. Vol. 9, A-1246–47, 1258–59. Third-Party Reserve rates do not recover *variable* costs. *Id.* at A-1260–61; *see also* Vol. 7, A-1209 ¶10, 1224 ¶34. Make no mistake, there is no FERC rate associated with, or designed to recover, the incremental variable cost to Wyoming retail customers of holding generation to provide Third-Party Reserves. Vol. 7, A-1224 ¶34, 1203 ¶20. PacifiCorp estimated those costs using the Aurora model to forecast base NPC to set state jurisdictional retail rates. *Id.* at A-1224–25 ¶35. By holding more generation capacity for reserves in its modeling than FERC required and implementing erroneous assumptions, techniques, and workarounds, PacifiCorp's Aurora model grossly overstated the variable *energy* cost impact to Wyoming customers. *Id.* at A-1218–19 ¶19, 1226 ¶39. While PacifiCorp references the $175 million reduction to NPC associated with the Commission's adjustment to Aurora as if that is a FERC-approved (and trapped) cost, Resp. Br. at 37, this was an output from PacifiCorp's demonstrably flawed Aurora model, not a FERC order. *See* Vol. 1, A-0036 ¶80 (Complaint alleging that "WIEC quantified the difference between the

*NPC model* with and without the Third-Party Reserves as $175 million") (emphasis added).

*Second*, PacifiCorp contends that WIEC's adjustment treated costs allocated under PacifiCorp's OATT as if FERC's requirements for holding and pricing reserves were not applicable. Resp. Br. at 38–39. That is, the Commission set a retail rate based on PacifiCorp's fictional ability to produce and sell power into the regional energy market to offset NPC. *Id.* at 35. These assertions rely on fact **7.a** in a vacuum. The conclusion PacifiCorp draws—namely, imputed revenues leading to trapped costs—falls apart when other essential facts are considered.

FERC never set a rate reflecting the variable cost impact on Wyoming retail customers of holding Third-Party Reserves. Vol. 7, A-1224 ¶34, 1203 ¶20. Rather, PacifiCorp presented its preferred version of the Aurora model to the Commission to forecast these costs, *id.* at A-1224–25 ¶35, and the Commission then set a "base" level of NPC that is recovered through PacifiCorp's base rates, Vol. 1, A-0126 ¶203. The problem here is that Aurora, as fact **4** states, was not intended for this use—it was not designed to simulate single-utility closed system dispatch and was "not configured to evaluate [Third-Party Reserves]" at all. Vol.

3, A-0833; Vol. 9, A-1269; Vol. 7, A-1207–08 ¶7. Therefore, as fact **5** indicates, PacifiCorp manipulated Aurora, "add[ing] in the requirements of non-native"—that is, FERC-jurisdictional—"load and generation, but correspondingly offset[ting] the modeled requirements with fictitious purchases and sales." Vol. 7, A-1207 ¶7. As laid out in fact **6**, these manipulations resulted in irreconcilable errors, including an uncontested $74.1 million reserve modeling error. *Id.* at A-1226 ¶40; Vol. 9, A-1272–73. So WIEC adjusted Aurora by reversing PacifiCorp's manipulations and removing the MW that *PacifiCorp*, not FERC, assumed for third-party loads and resources, as PacifiCorp notes. Vol. 7, A-1226 ¶40. But that's not all.

As fact **7.b** illustrates, the adjustment also required Wyoming customers to pay 100% of all fixed generation costs, including those used for Third-Party Reserves, thereby honoring federally mandated reserve rates. *Id.* at A-1227 ¶43. And, as fact **7.c** states, the challenged adjustment also gave PacifiCorp $12.2 million of revenue expected under the OATT rates for Third-Party Reserves as a proxy for variable costs. *Id.* How, then, did the Commission violate a FERC-filed rate, or trap costs? PacifiCorp cannot explain. It merely points back to the artificially

inflated NPC *PacifiCorp* forecasted with its own faulty Aurora model. *See* Resp. Br. at 44–45. PacifiCorp revealed as much in its 2024 Rate Case filing, when it corrected some of the modeling errors WIEC's expert uncovered during the 2023 Rate Case. Vol. 12, A-2041–42 (noting that PacifiCorp's 2024 rate case fixed certain modeling errors, reducing the estimated impact of the challenged Aurora adjustment from $23.5 million to $5.4 million on a Wyoming allocated basis).

*Third*, the subsidy discussion, arising from fact **8**, boils down to a factual dispute regarding the meaning of "appropriately apportion[ing] the costs between FERC jurisdictional customers and Wyoming ratepayers." Resp. Br. 43–44; *see* Vol. 12, A-2062–63. The district court, at PacifiCorp's prompting, wrongly inferred that the Commission was motivated to violate federally mandated rates to prevent unfair subsidization by Wyoming customers of FERC-jurisdictional customers. Vol. 12, A-2071. The point is that the Commission determined a reasonable level of forecasted variable energy costs to set retail rates, and the "reserves PacifiCorp assumed in its modeling method were ... *far in excess of the amount of reserves assumed when FERC set PacifiCorp's ancillary service rates*." Vol. 7, A-1212 ¶13 (emphasis added). Wyoming

ratepayers must pay for capacity held in reserve for *their* power grid reliability. Conversely, "costs of serving non-native loads and resources should be paid for by those loads and resources." Vol. 3, A-0832.

If PacifiCorp believes it requires [redacted] MW of total reserves to satisfy its Third-Party Reserve rates—which is what it presented to the Commission through Aurora—rather than the 996.3 MW it presented to FERC when setting those Third-Party Reserve rates, the proper venue to request more reserves is FERC, not the Wyoming Commission. *Id.* WIEC's expert testified that "[i]f [PacifiCorp's] FERC-approved OATT rates are inadequate to recover its cost of serving non-native customers, it would be most appropriate for [PacifiCorp] to seek to recover the funds through its FERC rates, not through an increase to Wyoming customer's rates." Vol. 3, A-0832. While the district court inferred that this statement "indicates that the Commission made an adjustment because it was dissatisfied with the allocation of costs between in-state customers and other customers," Vol. 12, A-2071, a reasonable inference leads to the opposite conclusion: the Wyoming Commission respected FERC's authority to determine the level of reserves PacifiCorp is required to hold and ultimately approved more reserves than FERC ever determined.

Thus, the Commission's adoption of WIEC's adjustment was an appropriate correction to PacifiCorp's drastically overinflated variable cost estimates. The Commission was motivated by a desire to "revalue third-party reserves in NPC in the same manner that FERC values them," Vol. 1, A-0128 ¶215, by using the revenues from the FERC-approved OATT rates for the fixed costs of providing reserves instead of allowing Wyoming customers to overpay variable costs due to Aurora's errors. This is entirely permissible.

*Finally*, and perhaps most egregiously, PacifiCorp seeks to diminish the centrality of its Aurora model to this case. *See* Resp. Br. at 6 (arguing the core issue "has nothing to do with the irrelevant quibbles as to the Aurora Model's forecast"); 26 ("Appellants again mischaracterize the parties' dispute as concerning the Aurora Model."); 39 ("Any alleged Aurora Model inaccuracies are a red herring in this federal preemption case."). In the very same sentence that PacifiCorp declares this "case is not about the Aurora Model," it argues this case *is* about "the Commission adopting the WIEC adjustment." *Id.* at 54. The WIEC adjustment *to what* then? PacifiCorp's Complaint demonstrates that these are one and the same. PacifiCorp confirms that "[t]o determine

its NPC, PacifiCorp uses a production forecasting cost model [(*i.e.*, Aurora)] that simulates the operation of its power system." Vol. 1, A-0025–26 ¶44. Then, "[t]o calculate its adjustment, WIEC simply removed the FERC-mandated reserve requirements from the NPC model [(*i.e.*, Aurora)]…." *Id.* at A-0029 ¶52. According to PacifiCorp's Complaint, "[t]he Commission's Order thus assumes that PacifiCorp should include generating capacity associated with holding Third-Party Reserves in the NPC model [(*i.e.*, Aurora)] contrary to what is allowed under its FERC-approved reserve rates and NERC reliability standards." *Id.* at A-0038 ¶84. Accordingly, any analysis of PacifiCorp's methodology theory of preemption must address the central role of PacifiCorp's error-ridden Aurora model. Aurora is a predicate to parsing the allegedly imputed revenues and trapped costs, rather than a FERC order.

In sum, the district court erred by ignoring multiple disputes of fact and by failing to view the evidence and draw all reasonable inferences in favor of the Commission and WIEC. PacifiCorp was not entitled to summary judgment as a matter of law.

## CONCLUSION

This appeal presents no live controversy and no basis for federal jurisdiction. PacifiCorp challenged only the 2024 Order, sought only prospective relief tied to that order, and now concedes that the order was superseded by the 2025 Order approving a settlement that expressly disclaimed reliance or approval of any methodology, including that on appeal. The Court cannot enjoin a superseded order, declare unlawful a methodology no longer in use, or issue advisory guidance about hypothetical future ratemaking approaches.

Nor did the district court properly resolve the merits in the alternative. Federal law does not require state commissions to accept error-ridden forecasting models, and FERC has never mandated recovery of the forecasted variable reserve costs PacifiCorp claims were impermissibly "trapped." By ignoring material factual disputes and failing to draw reasonable inferences in favor of the Commission and WIEC, the district court departed from settled summary judgment principles.

The Court should reverse the judgment below and direct dismissal of PacifiCorp's preemption claim as moot. At a minimum, the judgment

should be reversed because PacifiCorp was not entitled to summary judgment as a matter of law.

DATED this 29th day of April, 2026.

*/s/Austin W. Jensen*
Thorvald A. Nelson
Kristina (Tina) Van Bockern
Austin W. Jensen
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000
tnelson@hollandhart.com
trvanbockern@hollandhart.com
awjensen@hollandhart.com

*Attorneys for Appellant Wyoming Industrial Energy Consumers*

*/s/ James Peters*
James Peters
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
James.peters@wyo.gov

*Attorney for Appellants Christopher Boswell, Christopher B. Petrie, and Michael M. Robinson, in their official capacities as Commissioners of the Public Service Commission of Wyoming*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(A) and (B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and (g), this document contains 5,997 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2408 Build 16.0.17928.20114 64-bit) in Century Storybook Font.

All required privacy redactions have been made to this document. This document has been scanned for viruses using Windows Defenders Antivirus Client, which runs real time virus scans, is updated every eight hours, and accordingly, is free of viruses.

Dated: April 29, 2026.

*/s/ Austin W. Jensen*

## CERTIFICATE OF SUBMISSION OF HARD COPIES OF PLEADINGS

I hereby certify that the seven (7) hard copies of this pleading required to be submitted to the clerk's office will be exact copies of this ECF filing.

Dated: April 29, 2026.

*/s/ Austin W. Jensen*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I electronically filed the foregoing APPELLANT AND INTERVENOR DEFENDANT'S JOINT REPLY BRIEF using the court's CM/ECF system which will send notification of such filing.

Dated: April 29, 2026.

*/s/ Austin W. Jensen*